UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff-Respondent,<br><br>    v.<br><br>IVAN ARREDONDO-MEZA,<br><br>                    Defendant-Movant. | Case No. 4:12-CV-00583-BLW<br><br>             4:07-CR-00187-BLW<br><br>**MEMORANDUM DECISION &**<br>**ORDER** |

## INTRODUCTION

Pending before the Court is the remaining claim of Ivan Arredondo-Meza's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Civ. Dkt. 1) and his Motion to Strike Testimony (Civ. Dkt. 25). Having reviewed the briefing and the record in this case, conducted an evidentiary hearing, and reviewed the post-hearing submissions, the Court enters the following Order granting the Motion to Strike and granting relief on the remaining claim of the § 2255 Motion for the reasons set forth below.

## BACKGROUND

On April 24, 2008, Movant was convicted by a jury of conspiring to distribute 500 grams or more of methamphetamine and of continuing criminal enterprise. *Special Verdict*, Crim. Dkt. 209. Each of his eleven co-Defendants had previously pleaded

guilty.  On October 10, 2008, this Court sentenced him to a term of imprisonment of 480 months on each count, to be served concurrently.  *Judgment*, Crim. Dkt. 276.  The co-Defendants' sentences ranged from 18 to 151 months.  Following  completion of the appeals process, on November 16, 2012, Movant timely filed his § 2255 Motion claiming his conviction should be set aside because the drug amounts used at his sentencing were inconsistent with the jury verdict and that his counsel provided ineffective assistance during plea bargaining, trial, sentencing, and appeal stages of his case.

After considering the § 2255 Motion as well as the Government's Motion to Dismiss (Civ. Dkt. 5), the Court dismissed all claims except Movant's claim of pretrial ineffective assistance of counsel and appointed CJA attorney Stevan Thompson to pursue that claim.  *See Mem. Dec. and Order*, Civ. Dkt. 12.  Ultimately, counsel for the parties jointly filed a status report advising of five factual issues that they were unable to resolve and requesting an evidentiary hearing.  *Joint Status Report*, Civ. Dkt. 17.  Following an evidentiary hearing, counsel filed their respective post-hearing arguments for the Court's consideration.  Civ. Dkts. 23 and 26.

## MOTION TO STRIKE

At the evidentiary hearing, Movant was represented by appointed counsel Stevan Thompson, and the Government was represented by AUSA Michael Fica who had prosecuted the case against Movant and his co-Defendants.  As summarized more fully below, the Court heard testimony from defense counsel James Archibald, Movant, and case agent Sgt. Nathan Hansen.  The testimony primarily focused on circumstances

surrounding two plea offers, their communication to Movant, and Movant's rejection of the offers.  The Government had first made a plea offer several weeks before trial and subsequently extended the same offer following jury selection.  Mr. Archibald and Movant met in a holding cell near the courtroom to discuss the latter offer.

AUSA Fica then recalled Sgt. Nathan Hansen to the stand to rebut Movant's claim that the re-extended plea offer was not communicated to him with the aid of an interpreter.  Sgt. Hansen testified that Herman Garcia, one of the court interpreters assigned to the trial, had told him after the meeting in the holding cell that he had been present at that meeting.  Mr. Thompson objected to the testimony on the grounds of hearsay.  He also noted that Mr. Garcia had indicated to him and AUSA Fica the day before the evidentiary hearing (some eight years after the trial) that he did not remember whether he had been in the holding cell with Mr. Archibald and Movant.  Discussion on the record ensued as to whether the Rules of Evidence apply at a § 2255 hearing.  The Court then allowed the testimony subject to a motion to strike.

AUSA Fica made an offer of proof regarding the context in which the conversation occurred.  Mr. Garcia told Sgt. Hansen and him that after Mr. Archibald had presented and reviewed the plea offer with him, Movant shoved it back at Mr. Archibald and would not discuss the issue of a plea further. Although AUSA Fica was not offering that as evidence, the Court again stated that he would not consider Sgt. Hansen's testimony unless it was convinced the Rules of Evidence did not apply.

At the outset, the Court notes that in his post-hearing submission, AUSA Fica did not raise or rely on Sgt. Hansen's rebuttal testimony.  Mr. Thompson, however, filed the pending Motion to Strike urging the Court to strike and not consider that testimony on the grounds of hearsay and attorney/client privilege.

Discussion at the hearing focused on Rule 1101 of the Federal Rules of Evidence which provides that the Rules of Evidence do not apply to a court's determination on preliminary questions of fact governing admissibility, grand jury proceedings, and certain enumerated miscellaneous proceedings such as sentencings and supervised release revocation hearings.  *Fed. R. Evid.* 1101(d).  Hearings in § 2255 proceedings are not referenced.

Perhaps because the lack of mention of § 2255 proceedings leaves no room for argument that the Rules of Evidence do not apply, there is virtually no case law on the issue.  However, reference to the Federal Habeas Manual (2014) states unequivocally and without case law citations that the Federal Rules of Evidence apply to § 2255 proceedings.  *See,* Brian R. Means, *Federal Habeas Manual, A Guide to Federal Habeas Corpus Litigation*  286, § 4:29 (2014) (citing Fed. R. Evid. 1101(e) (now 1101(d)).  *See also Fed. R. Ev. 1101 advisory committee's notes to 1972 proposed rules, note to subdivision (d)* ("The rule does not exempt habeas corpus proceedings.")); *Smith v. Brewer*, 444 F. Supp. 482, 486 (S.D. Iowa 1978) (referring to Rule 606 and noting that Federal Rules of Evidence apply to habeas proceedings).

While Rule 1101(e) states that a federal statute or Supreme Court rule may provide for admission or exclusion of evidence independently from the Federal Rules of Evidence, both 28 U.S.C. § 2255 and the Rules Governing Section 2255 Proceedings are silent on the issue. Accordingly, in the absence of authority to the contrary, the Court finds that the Federal Rules of Evidence apply to § 2255 evidentiary hearings and thus grants the Motion to Strike.

## STANDARD OF LAW

The well-established two-prong test for evaluating ineffective assistance of counsel claims is deficient performance and resulting prejudice. *See Strickland v. Washington*, 466 U. S. 668 (1984).

In order to establish deficient performance, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Under the performance prong, there is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." *Id*. at 689. This is so because for the defendant, "[i]t is all too tempting . . . to second-guess counsel's assistance after conviction or adverse sentence. . . ." *Id.* For the court, "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (discussing *Strickland*).

In order to establish prejudice, a defendant must affirmatively prove by a reasonable degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. The *Strickland*

standard is "highly demanding." *Kimmelman v. Morrision,* 477 U.S. 365, 381-82; 386 (noting that the court should "assess counsel's overall performance throughout the case" when evaluating whether his assistance was reasonable).

Both prongs of the *Strickland* test must be met "before it can be said that a conviction (or sentence) 'resulted from a breakdown in the adversary process that render[ed] the result [of the proceeding] unreliable' and thus in violation of the Sixth Amendment." *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687). Whether or not counsel's performance was deficient is irrelevant if there was no prejudice as both of *Strickland*'s prongs must be met to be entitled to relief. In evaluating an ineffective assistance of counsel claim, a court may consider the performance and prejudice components of the *Strickland* test in either order. *Strickland*, 466 U.S. at 697. Application of the highly demanding *Strickland* standard to the plea bargaining context was recognized in *Hill v. Lockhart*, 474 U.S. 52 (1985).

In his § 2255 Motion, Movant based his claim on *Lafler v. Cooper*, 132 S.Ct. 1376 (2012) and *Missouri v. Frye*, 132 S.Ct. 1399 (2012). *Lafler* and *Frye* applied the *Strickland* and *Hill* standards to the factual pretrial/plea bargaining circumstances of each of those cases. *Frye* is factually distinguishable from Movant's case and is irrelevant given that defense counsel *Frye* had not advised the defendant of an existing plea offer. *Lafler* is similar to Movant's case except in *Lafler*, counsel's deficient performance was conceded by the government. There, the defendant rejected a plea offer based on erroneous advice of counsel that he could not be convicted, was convicted at trial, and

received a harsher sentence than that contemplated in the plea offer.  *Lafler* explored the specific issue of prejudice where ineffective assistance of counsel causes a defendant to reject a plea offer followed by conviction at trial and a harsher sentence than he would have received under the plea offer.  In other words, "[h]aving to stand trial . . . is the prejudice alleged."  *Lafler*, 132 S.Ct. at 1385.

"Even if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence."  *Id.* at 1386.   A fair trial does not excuse deficient performance during the plea stage.  *Id.* at 1388.  Rather, the focus becomes the "fairness and regularity of the processes that preceded [the trial].  *Id.*

## FACTUAL ISSUES

The parties agreed that an evidentiary hearing was necessary to resolve certain issues identified in their joint Status Report (Civ. Dkt. 17), and the parties presented witnesses to address those issues.  Certain background information will provide context for resolution of those issues.

## A.     Background

The Court initially appointed CJA attorney Kelly Kumm to represent Movant at his arraignment on November 16, 2007.  Crim. Dkt. 95; Crim. Dkt. 100.  Approximately three weeks later (four months before trial), James Archibald entered an appearance. Crim. Dkt. 108.  At the time of the evidentiary hearing, Mr. Archibald had been practicing law for twenty-five (25) years and thus would have been practicing for sixteen

(16) years at the time he undertook representation of Movant.  Mr. Archibald testified that Movant's relatives contacted him advising that Mr. Kumm wanted Movant to plead guilty, but Movant wanted to go to trial.  Mr. Archibald further testified that Movant never stated the he wanted to pursue a plea deal.  Rather, Movant maintained the position that he wanted to go to trial throughout his representation.

Trial was set for April 21, 2008.  On April 18, 2008, Mr. Archibald filed a Motion in Limine (Crim. Dkt. 187) pertaining to the alleged late disclosure of certain witnesses and of a "sit-down" interview with Movant and the Government's intent to use the information in the interview against him.  After jury selection and brief discussion off the record, the Court heard argument on the specific issue of the allegedly untimely disclosure of a statement, characterized as a confession, that made by Movant to law enforcement at the time of or shortly after his arrest.  *Trial Tr.* at 104, Crim. Dkt. 404.  Mr. Archibald apparently thought that the confession was part of the proffered testimony and would not be introduced.  *Trial Tr.* at 106.  Mr. Archibald stated that ". . . I try not to take confession cases to trial for obvious reasons."  *Trial Tr.* at 108.  He also stated that neither Mr. Kumm nor Movant had advised him of the post-arrest statements, "[a]nd so this was a complete surprise last week."  *Id.*  He continued "[a]nd I don't think we'd be here picking a jury if this is a legitimate confession."  *Trial Tr.* at 109.

After hearing AUSA Fica's assertions that he had discussed the statement contained in the police report at least twice in the preceding weeks with Mr. Archibald, the Court decided to allow the parties to reopen plea negotiations and to also hold a

suppression hearing.  The Court denied the Motion to Suppress.  *Trial Tr.* at 106.  As discussed below, Movant did not accept the Government's renewed plea offer.

Movant never attended school and does not read or write in Spanish or in English. Therefore, part of the Court's inquiry is whether he received adequate interpretation of the evidence against him and of the terms and benefits of the plea offers.  Although he can apparently understand and speak English on a limited basis, there is no indication that Movant would be able to comprehend the evidence and a plea offer without adequate interpretation.  Movant testified on cross examination that he was able to speak some English but not enough to be in court or to understand legal matters and that he had told Mr. Archibald that he needed someone to translate for him.

Mr. Archibald testified from memory.  He had discarded his file along with other inactive files after he moved from his prior office a year ago. Mr. Archibald testified that he utilized the interpretive services of two individuals when visiting Movant in jail.  One was his secretary/paralegal who was very fluent in Spanish having spent eighteen months in Ecuador.  The other was bilingual having grown up in a Mexican-American home and whose sister was a court interpreter who was unavailable to accompany him on visits to Movant in jail..  The Court questions whether they were sufficiently versed in legal terminology to adequately explain the evidence, the plea offer, and the benefits of pleading guilty.

Mr. Archibald did not recall reading any materials to Movant word for word. Rather, he summarized the documents and his discussions with AUSA Fica, and those

summaries were interpreted.  Mr. Archibald gave the documents to Movant, but he

recognizes that Movant would not have known exactly what they said absent translation.

Movant does not dispute that interpreters were present during the jail visits.

However, he contends that none was present in the holding cell when the second plea

offer was allegedly communicated.

**B.      Issues Identified in the Joint Status Report**

The issues as framed in the Joint Status Report and the relevant testimony are as

follows:

**1.      Was a plea offer of some type made to the defendant, and, if so, what were its terms as to any sentencing recommendations and drug quantity agreements.**

First Plea Offer

Mr. Archibald testified that he had discussions with AUSA Fica during the first

several months after he became involved in the case.  He recalled that AUSA Fica offered

to dismiss one charge if Movant pleaded guilty to the other.  He did not recall the details

of the plea offer.  Movant claims that part of the plea offer was a promise of a sentence of

twenty (20) years.  Mr. Archibald testified that if there had been an offer of a twenty (20)

year sentence as Movant claims, it would have been in the written agreement. Neither

Mr. Archibald nor AUSA Fica has been able to locate a copy of the draft written

agreement.

Agent Hansen was present with AUSA Fica during telephone conversations and

meetings with Mr. Archibald.  He testified that the plea offer called for dismissal of the

continuing criminal enterprise charge in return for Movant's plea to the conspiracy

charge.  In accordance with usual practices, there was no offer of a specific sentence.

Movant testified that on one occasion when Mr. Archibald visited him in jail, Mr.

Archibald told him that the prosecutor wanted to give him twenty (20) years and that the

Government was going to use what he said against him.  Although Movant testified that

Mr. Archibald brought an interpreter with him on all three jail visits, he also testified that

Mr. Archibald had told him about a plea offer but had not brought the "papers" with him.

Second Plea Offer

Upon the Court's invitation after jury selection, in Agent Hansen's presence,

AUSA Fica re-extended the offer.  Agent Hansen was present when AUSA Fica spoke

with Mr. Archibald.  Mr. Archibald recalled as well that the same offer was extended.

Movant testified that he did not realize that the Government was offering a plea

agreement but that he would have accepted it if Mr. Archibald had brought someone to

explain it to him because the Government was going to give him twenty (20) years.

Based on Mr. Archibald's and Agent Hansen's testimony, the Court does not find

credible Movant's testimony that the Government offered him a twenty-year sentence.

Furthermore, on cross examination, Movant testified that Mr. Archibald did not actually

tell him there was an offer to plead guilty in return for a sentence of twenty (20) years.

Rather, Mr. Archibald mentioned twenty (20) years and Movant assumed that twenty (20)

years was the deal.  The Court notes that the statutory minimum for the offense was

twenty (20) years and can infer that counsel would have likely conveyed that information.

Movant testified that when he was arrested, police officers said the penalty would be twenty (20) years to life.  Those statements  by counsel and the police officers may have given rise to confusion on Movant's part.

Whether Movant was confused or not, the Court finds that the plea offer did not contain any sentencing recommendation.  Indeed, the Court knows, from it's extensive involvement with criminal cases in the District of Idaho, that it is not the practice of the U.S. Attorney's Office in this District to to recommend a particular sentence in its plea agreements.   There was no testimony at all regarding any drug quantity agreement. Accordingly, the Court finds there was no such agreement.

**2.     If plea negotiations occurred, what were the nature of those negotiations and when were they communicated to the Defendant.**

There do not appear to have been any "negotiations" per se.  Rather, each time, the Government conveyed an offer through Mr. Archibald, Mr. Archibald conveyed it to Movant, and Movant rejected it.

**3.     What was the advice provided by trial counsel to Defendant with respect to pursuing plea negotiations and/or accepting any proposal which may have been made versus proceeding to trial.**

Just as there appeared to have been no negotiations per se, there is a lack of evidence as to any specific advice offered by Mr. Archibald.

<u>First Plea Offer</u>

According to Agent Hansen, shortly after he replaced Mr. Kumm, Mr. Archibald advised that Movant was not interested in a plea.  However, he stated that he presented Movant with any offer the Government would make.

Mr. Archibald testified that he fully explained to Movant the risks of going to trial and reviewed the evidence that would be presented, the grand jury transcripts, the police reports, and the witness list prior to trial.  He did so with the aid of an interpreter.

On cross examination, Mr. Archibald testified that he did not read the entire grand jury transcript to Movant or have it translated into Spanish.  Rather, he would discuss the witnesses and co-Defendants and ask Movant for a list of witnesses or people he would like interviewed.

Mr. Archibald does not recall discussing the potential of pursuing a § 5K1.1 motion for cooperation or substantial assistance, but he stated that a cooperation provision may have been in the plea agreement.  He testified that he explained the sentencing guidelines in terms of base offense level and acceptance of responsibility to him.

Second Plea Offer

Mr. Archibald testified that he conveyed this offer to Movant in the holding cell near the courtroom.  He further testified that he had a court interpreter, possibly Mr. Herman Garcia.  Mr. Archibald informed Movant of the evidence against him, the witnesses that would be called against him, the post-arrest statement that the government intended to introduce at trial, and the implications of the proffer interview.  Mr. Archibald further told Movant that attorneys for several co-Defendants whom Movant had thought would not testify against him were in the courtroom.  Mr. Archibald said he thought they should discuss the plea offer.  Movant, however, told Mr. Archibald not to

bring him any more plea agreements or he would fire him. Agent Hansen testified that AUSA Fica had confirmed with Mr. Archibald that he had reviewed the evidence and witnesses with Movant before Movant rejected the plea offer.

Movant testified that Mr. Archibald had many papers with him in the holding cell but no translator to explain them.  According to him, Mr. Archibald tried to call his secretary (presumably one of the two interpreters Mr. Archibald used) on a speaker phone, but there was no answer.

The Court notes that Agent Hansen testified that he did not see Herman Garcia or any other interpreter going into the holding cell with Mr. Archibald to present the plea offer.  The Court further notes that Herman Garcia advised Mr. Thompson and AUSA Fica the day before the evidentiary hearing that he did not remember whether or not he was present in the holding cell to interpret the plea agreement.

Mr. Archibald did not testify specifically about what advice he gave.  Rather, he appears to have presented the offer twice and accepted Movant's stated desire to go to trial without any thorough discussion of issues like acceptance of responsibility or a § 5K1.1 departure.  Furthermore, the adequacy of interpretation of the first plea offer and whether there was any interpretation of the second plea offer is questionable on the evidence presented.  Mr. Archibald testified that the court interpreter was present.  Agent Hansen did not see an interpreter go into the holding cell.  Movant contends there was no interpreter present.

**4.     Was trial counsel's advice with respect to proceeding to trial rather than pursuing plea negotiations hampered by the fact that he was apparently unaware of a confession made by the Defendant that was ultimately presented at the time of trial.**

Mr. Archibald's argument and statement to the Court in his Motion in Limine strongly suggest that he would have strongly encouraged Movant to accept the plea offer had he known about the confession at the time of the first plea.  Even though Agent Hansen said the post-arrest statement was only a small part of the Government's case and minimized his involvement, he stated that at least it provided some corroboration for statements of co-Defendants and other evidence.  The testimony of Movant's co-Defendants was much more significant than the confession.

Movant testified that did not know until he got to court that the post arrest statement he made would be used against him although he knew he had made a statement.  He told Mr. Archibald about the cooperation statement he made while represented by Mr. Kumm.  Whether or not he did, it appears that the Government advised Mr. Archibald.  Given that Mr. Archibald claimed at the hearing on the Motion in Limine that he was unaware of the confession and the proffer, then any advice he gave regarding the first plea offer would have been hampered by that lack of knowledge.

**5.      If such confession was disclosed by the Government and to trial counsel, when was that disclosure made and why was trial counsel apparently not aware of said disclosure until the trial was set to begin.**

The Motion in Limine was triggered by Mr. Archibald's receipt a day earlier of a police report including the subject statement the Government intended to introduce against Movant at trial. *Motion in Limine*, ¶ 3, Crim. Dkt.187.  The Court made a finding on the Motion in Limine that the statement had been timely produced given that AUSA Fica had at least twice discussed with Mr. Archibald his intent to introduce the statement at trial which discussions should have at least caused him to question whether all evidence had been produced either as hard copy or on a disk. *Trial Tr.* at 111-12. Nothing at the evidentiary hearing changes that determination.

As for why Mr. Archibald was not aware of the confession until just before trial, it appears from the hearing on the Motion in Limine that he thought the confession was made as part of the proffer and not immediately after the arrest.  Even at the evidentiary hearing, he testified that he did or does not distinguish between the confession and the proffer.  This raises the question of why he thought that AUSA Fica would use that statement if it was part of the proffer when it would have clearly been immunized. Again, this should have caused Mr. Archibald to inquire further.

**ANALYSIS**

## A.    Plea Offers

No proposed plea agreement was presented to the Court.  AUSA Fica could not

locate a paper or electronic copy of it, and Mr. Archibald had destroyed his file a year

ago along with other cases no longer pending.  However, the Court notes that this § 2255

Motion was, in fact, pending.

As stated above, the Court finds that there were no sentencing recommendations

or drug quantity agreements in either of the two plea offers.  However, without a copy of

the plea agreement, whether there was a cooperation provision is less certain.  Counsel

stipulated at the evidentiary hearing that once Mr. Archibald became involved in the case,

there was no discussion with the Government of consideration for cooperation under

§ 5K1.1.  However, such consideration was not precluded.  AUSA Fica confirmed that he

generally includes cooperation language in a plea agreement in case a defendant who

initially declines to cooperate subsequently decides to do so.

Regardless of whether there was a cooperation provision, it is apparent from his

testimony on cross examination that Mr. Archibald did not discuss with Movant the

potential of cooperating with the Government.  Nor does it appear that Movant was

interested in cooperation.

## B.    Deficient Performance

Mr. Archibald communicated the two plea offers.  Movant rejected them.  But the

inquiry does not end there. The issue is whether Mr. Archibald communicated the offers

effectively – i.e., did he provide adequate interpretation of the plea offers, did he advise

Movant about the comparative advantages of pleading guilty with or without cooperation, and did he properly counsel him about the likelihood of being convicted if he chose to go to trial.

Once a plea offer has been made, a defendant has the right to counsel's assistance in making an informed decision about whether to accept it.  *Nunes v. Mueller*, 350 F.3d 1045, 1052 (9th Cir. 2003) (failure to accurately communicate plea offer constitutes ineffective assistance of counsel); *United States v.Leonti*, 326 F.3d 1111, 1117 (defendant is entitled to effective assistance of counsel in deciding whether and when to plead guilty); *United States v. Rivera-Sanchez*, 222 F.3d, 1057, 1060-61 (9th Cir. 2000) (counsel is required to ensure that the defendant understands the plea offer's terms and significance); *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) ("[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer.") (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)).  Inadequate interpretation when rendering advice to or communicating with a defendant can constitute ineffective assistance of counsel.  *See Gallo-Vasquez v. United States*, 402 F.3d 793, 799 (7th Cir. 2005).

The period from the arraignment extending to the beginning of trial is "perhaps the most critical period of the proceedings."  *Nunes*, 350 F.3d at 1052 (citing *Powell v. Alabama*, 287 U.S. 45, 57 (1932)).  It is during this time that a defendant may have his best opportunity for avoiding or mitigating a harsh sentence by cooperating with the government.  *Leonti*, 326 F.3d at 1116-17.

A competent attorney's duties, in addition to advising whether and when to cooperate, include "facilitating communication between the defendant and the government, attending proffer sessions, ascertaining the government's expectations and whether the defendant is satisfying them, communicating the client's limitations to the government, and establishing a record of attempts to cooperate." *Id.* at 1118-19.  In addition to failure to facilitate cooperation, an ineffective assistance of counsel claim can arise from failure to advise a defendant to enter a plea bargain when it is clearly in his interests.  *Id.* at 1117.

Here, there is no indication that Movant wanted to or would have cooperated, but he was still entitled to competent advice.  Indeed, even where counsel is aware, as here, that the evidence against a defendant is "overwhelming" and the defendant has advised him that he will not cooperate, counsel's performance is deficient if he does not advise defendant of the option to plead without cooperating.  *United States v. Booth*, 432 F.3d 542, 549-50 (3rd Cir. 2005).  "[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer" because "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty."  *Id.* (quoting *United States v. Day*, 969 F.2d 39, 44 (3d Cir. 1992)).  The possibility of a lesser sentence pleading without a plea agreement is important knowledge on which to base a decision on whether to plead guilty.  *Id.*

Several weeks before trial, AUSA Fica disclosed to Mr. Archibald the identity of co-Defendants and co-conspirators who would be called at trial and provided summaries of their testimony.  Agent Hansen testified that two to three weeks in advance of trial Mr. Archibald asked AUSA Fica for a detailed outline of the evidence to be presented at trial. They discussed the physical evidence, identified all of the witnesses, provided summaries of their expected testimony, and provided the post-arrest statement.  Agent Hansen testified that he believed both the post-arrest statement and proffer were discussed with Mr. Archibald in any discussion during which he was present.  Mr. Archibald provided that information to Movant.  According to Mr. Archibald, Movant rejected the plea offer feeling confident that no witnesses would testify against him.  Mr. Archibald explained to him that the Government would have a hard time proving their case if witnesses did not appear.  Movant repeatedly stated that no witnesses would show up.

Movant testified that he did not understand the evidence against him because he did not see anything.  In the months leading up to trial, Mr. Archibald never gave him any advice as to whether he should go to trial or enter into a plea agreement.  He was upset at the meeting in the holding cell because he did not understand what Mr. Archibald said without an interpreter.

At the meeting in the holding cell, Mr. Archibald did not tell him that there was an offer for him to plead to one count and the other would be dismissed.  Movant asked him about witnesses, but Mr. Archibald said he did not have a list.  When he asked him where the evidence was, Mr. Archibald said that the prosecutor did not want to give it to him.

Movant's statements regarding the witnesses and evidence are simply not credible. Movant was present in court earlier in the day when the Court listed the witnesses.  His statement that he did not hear or remember that is also not credible.  However, even if the evidence was adequately interpreted, Mr. Archibald's testimony that he told Movant that witnesses were showing up with their attorneys and advising him of the evidence falls short of testifying that he engaged in a meaningful discussion of the benefits of a plea agreement.  In other words, merely telling Movant that he would likely be convicted is not sufficient without a benefit analysis.

## C.   Prejudice

In the plea process context, forfeiture of the opportunity for a 3-level reduction for acceptance of responsibility can constitute prejudice.  *Day*, 285 F.3d at 1172.  For example, prejudice is shown when a defendant establishes that but for counsel's deficient performance in incorrectly advising him regarding the benefits of a plea agreement, he would have received a lesser sentence based on acceptance of responsibility.  *Id.  See also Booth*, 432 F.3d at 549-50 (loss of 3-level reduction for acceptance of responsibility constituted prejudice where counsel failed to inform defendant that he could enter an "open" plea rather than accept plea offers based on cooperation); *Blaylock*, 20 F.3d at 1466 (loss of what would have been at least a 2-level reduction for acceptance of responsibility and likelihood that government would not have sought enhancements constitutes prejudice where counsel failed to communicate plea offer).

Even if a defendant has insisted upon going to trial and received a fair trial, he can still establish prejudice if he can show that there is a reasonable probability that the result would have been different. *Blaylock*, 20 F.3d at 1466 (defendant entitled to show that had he known of a plea offer, he would have accepted it).

*Lafler* enunciated the necessary prejudice showing where counsel's performance in advising regarding a plea offer is deficient:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . . , that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S.Ct. at 1385.

Movant testified that he now knows how the federal sentencing guidelines work because his current attorney explained them. He testified that Mr. Archibald never explained that he would receive acceptance of responsibility reductions if he pleaded guilty or that he could pursue a cooperation departure. Mr. Archibald did not testify to the contrary.

Movant's total offense level of 42 together with a criminal history category of 1 yielded a guideline range of 360-life. The Probation Office has advised the Court that the guideline range would not have been any less if Movant had been convicted of only the conspiracy charge. Thus, the only definite benefit to Movant for pleading guilty after the first offer would have been to receive a three-level reduction for acceptance of responsibility. At best, he would have received a two-level reduction had he accepted the

second plea offer.  But assuming an earlier plea, the total offense level would have been reduced to 39 which would have yielded a guideline range of 262-327 months, significantly less than the 480-month sentence he received.  Had he pleaded guilty earlier and cooperated, his sentence would have been even less.[1]  A two-level reduction would have reduced the total offense level to 40 which would have yielded a guideline range of 292-365 months.

Mr. Archibald admitted that Movant would have received a three-level reduction for acceptance of responsibility at least if he had pleaded guilty after the first offer.  He also recognized that Movant could have potentially received a departure for providing substantial assistance if he met the criteria.  Either way, he recognized that Movant would have gotten a lesser sentence by pleading guilty than going to trial and losing.

Had Movant entered a plea agreement, there is no reason to believe that it would not have been presented to the Court or that the Court would not have accepted its terms.  Given the obvious prejudice outlined above, the *Lafler* factors appear to have been met.

## CONCLUSION

The stakes were high for Movant in this case.  All co-defendants had pleaded guilty with cooperation and substantial assistance provisions in their plea agreements prior to the trial, some of them as much as three months before trial although others were

---

[1] For example, Co-Defendant Ramon Arredondo, who pleaded guilty and testified against Arredondo-Meza at trial, received a three-level adjustment for acceptance of responsibility and a six-level § 5K1.1 departure for substantial assistance.  *Minutes*, Crim. Dkt. 248.  He was sentenced based on a range of 151-188 months.  *Id*.  The offense level for that sentencing range is 34 with a criminal history category of I which means that his original total offense level was 43 in contrast to Arredondo-Meza's 42.  The Court imposed a sentence of 151 months.

MEMORANDUM DECISION & ORDER - 23

shortly before trial. At the very least, at the time of the second plea offer, it was obvious that the evidence against Movant was overwhelming.  General statements that the Government would have a hard time proving its case without witnesses, or merely telling Movant about the evidence or witnesses without including meaningful discussions of the likelihood of conviction and the benefit of pleading without a cooperation did not constitute adequate representation.

The evidentiary hearing revealed no indication that Archibald engaged in substantive discussions with Movant and provided him with proper interpretation regarding his options, the risk of trial, and the benefit of pleading guilty even without cooperation.  It is true that Movant's testimony was often conflicting and inconsistent and accordingly less than credible on some points.  He may very well have initially wanted to go to trial and sought Mr. Archibald's representation because of Mr. Kumm's advice to plead guilty with some attempts at cooperation.  He may very well have adamantly refused the plea offers.  He may very well have refused to believe that anyone would testify against him and failed to provide a list of witnesses to testify on his behalf. However, this does not excuse counsel from taking pains to educate Movant given the obvious risks of going to trial.  Rather, the record suggests that counsel did not attempt to negotiate a plea agreement but only agreed to communicate any offer the Government would make, which he did, but without reopening negotiations as he became aware of the strength of the evidence against Movant.  Although Mr. Archibald testified that he advised Movant of the grand jury testimony, the witnesses, and the other testimony the

Government planned to introduce, he only tangentially mentioned advising Movant of the ramifications of going to trial.

The Court feels that the adequacy of the background of the interpreters used at the jail visits is questionable and the issue of whether an interpreter was even present in the holding cell adds credence to Movant's claims that he did not understand the offers.

Upon a showing of deficient performance and prejudice, "[t]he correct remedy . . . is to order the [Government] to reoffer the plea agreement."  If the defendant accepts the offer, the trial court can then (1) vacate the convictions and resentence the defendant pursuant to the plea agreement, (2) vacate only some of the convictions and resentence accordingly, or (3) leave the convictions and sentence from trial undisturbed." *Lafler*, 132 S.Ct. at 1392.

Here, had counsel's performance been deficient at the time of the first plea offer, that deficiency was cured when the Government re-extended the offer.  However, given the Court's conclusion that counsel's performance at the time of the second plea offer was deficient, the Government must again reoffer the plea agreement and give Movant an opportunity to accept it. Given the likelihood that Movant will accept the plea offer, the parties may so stipulate and avoid the formality of reoffering the plea agreement. In any event, when the plea offer is accepted, the Court will resentence Movant accordingly.

## ORDER

### IT IS ORDERED THAT:

1.  Movant's Motion to Strike (Civ. Dkt. 25) is **GRANTED**.

MEMORANDUM DECISION & ORDER - 25

2.  Movant's claim of ineffective assistance of counsel at the plea stage alleged in Ground 4 of his § 2255 Motion is **GRANTED**.

3.  The Government shall reoffer the Plea Agreement to Movant for his consideration within ten (10) days from the date of this Order, or the parties may stipulate that Movant will accept the plea offer within ten (10) days from the date of this Order.

DATED: September 29, 2016

B. Lynn Winmill
Chief Judge
United States District Court